THE BORDER STATE PERPETUAL BUILDING ASSOCIATION OF BALTIMORE CITY *vs.* TIMOTHY HAYES.

*Building Association Mortgage—Usury—Construction of the Act of 1876, ch. 358, relating to Usury.*

The Act of 1876, ch. 358, provides that usury shall not be a cause of action "in any case where the bond, bill obligatory, promissory note, bill of exchange or other evidence of indebtedness has been redeemed or settled for by the obligor or obligors, in money or other valuable consideration, *except that of a renewal in whole or in part of*

*the original indebtedness.*" H. having become a member of a Building Association in 1873, and taken eight shares of its stock, of the par value of $260 per share, obtained from the Association a loan of $2080, secured by mortgage. He continued to pay the dues required, and the interest on the mortgage at the rate of eight per cent. until November, 1876, when he determined to reduce his indebtedness, and to that end executed a new mortgage to said Association upon the same property, for $1040, as an advance on four shares of stock. Out of this $1040 so received he paid up seven of the eight shares of stock he had originally taken, but left one share of the original stock still outstanding, and this one share was not paid up until August, 1879. On a bill filed in the year 1883, by H. against the Building Association, claiming that said transaction was usurious, and praying that the defendant might be required to release said mortgages on being paid what was actually due, it was HELD.

1st. That the case came within the exception of the Act of 1876, ch. 358.

2nd. That the second mortgage transaction was a part of the first; and the application of a part of the money received on the second mortgage in discharge of the first did not close the original transaction; and H. had the right to a rebate of all the usurious interest he had paid on the original mortgage.

The Constitution of the Building Association provided that the profits that might accrue should be credited *as so much paid* on the shares not paid up in full, and paid *in cash* to those who had paid up their shares; and also that when the shares were paid up by instalments and dividends of profits the mortgaged property should be released. HELD :

That the profits credited to H. were not to be refunded by him, but were to go in part payment of the mortgage.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed in the year 1883, by the appellee against the appellant, alleging the making by the former to the latter of two mortgages, both on the same property, the second of which was merely for the balance due on the first, and a renewal thereof; and claiming that the whole transaction was usurious. The

prayer of the bill was for an account ascertaining the amount due to the defendant, and for a decree requiring the release of said mortgages on the payment of the amount due under them. The Court (BROWN, J.,) passed a decree requiring the defendant to execute a release of both mortgages on payment of the balance remaining unpaid of the sum tendered by the complainant. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*James McColgan,* for the appellant.

*Wm. H. Bayless,* and *M. R. Walter,* for the appellee.

STONE, J., delivered the opinion of the Court.

On the 2nd of October, in the year 1873, the appellee executed to the appellant corporation a mortgage to secure the payment of a loan to him of $2080, with interest at the rate of eight per cent. per annum.

The appellee alleges in his bill that this interest is usurious, and asks to be relieved from the excess over six per cent.

The appellant corporation contends that the mortgage has been paid and settled, and that the Act of 1876, chap. 358, is a full and complete bar to the claim of the appellee.

The first question in the case, therefore, is the question of fact, whether the mortgage has been fully paid and settled in purview of the Act of 1876, chap. 358.

The evidence in this case satisfies us that the following are the facts:

The appellee having become a member in 1873 of the appellant corporation, and taken eight shares of its stock, each share being of the par value of $260, obtained the

loan of $2080 by virtue of his ownership of these shares,
and continued to pay the dues required and the interest
on the mortgage at the rate of eight per cent. until No-
vember, 1876. That about November, 1876, finding that
he was unable to pay his dues and interest on eight shares,
he determined to reduce the number of shares, and con-
sequently the amount of his indebtedness to the appel-
lant corporation. That to effect this purpose, he executed
another and new mortgage *on the same property* for $1040
as an advance on four shares of stock. Out of this $1040
so received he paid up seven of the eight shares of stock
he had originally taken, but left one share of the original
stock still outstanding, and this one share was not paid up
until August, 1879. The consequence of this transaction
was, that the appellee after the reduction of the number
of his shares had to pay his dues and interest on five, in-
stead of eight shares, thus reducing his payments nearly
one-half. The Act of 1876, chap. 358, is to be applied to
these facts.

Prior to the Act of 1876 the debtor, who had paid
usurious interest, had the right to recover back the excess
over the legal rate, in an action for money had and re-
ceived, notwithstanding the debt had been fully paid, and
the transaction closed between the parties. This Act
made a change in the law, and provided that usury should
not be "a cause of action in any case where the bond, bill
obligatory, promissory note, bill of exchange or other evi-
dence of indebtedness, has been redeemed or settled for
by the obligor or obligors, in money or other valuable
consideration, *except that of a renewal in whole, or in part
of the original indebtedness.*"

It is the intention of that law that when a usurious
contract is *entirely* paid, and the whole transaction closed
between the parties, then no cause of action should lie
against the usurer. But the Act is equally explicit in
declaring that it means a real and *bona fide,* and not a

OCTOBER TERM, 1883.                601

Border State Perpetual Build. Ass'n *vs.* Hayes.

sham payment or settlement. It says in effect, that although the original bond, note, or other evidence of debt may be paid, yet if it be paid with money obtained from the creditor for that purpose, that Act shall not apply. Such a payment is a mere renewal of the debt. It makes no difference whether the renewal is for the whole, or for a part only of the debt; either comes within the exception engrafted in the statute. The debtor may pay five-sixths of the debt, and renew his note or obligation for the other sixth part, but as long as that other sixth part remains unpaid, the debtor has the right of action to recover back all the usurious interest he has paid on the whole debt.

The case before us has every ear-mark of a renewal, and comes within the exception of the Act of 1876. The appellee was indebted to the appellant corporation *upon a mortgage.* He executed another mortgage to the same appellant corporation, and applied a part of the money that he received on the last mentioned mortgage in discharge of the first. This makes this second mortgage transaction a part of the first, as clearly as the branch that springs from the trunk is a part of the tree.

The original transaction is not closed and settled, and the appellee has therefore the right to a rebate of all the usurious interest he has paid on the original mortgage.

In these two mortgages the appellee and appellant corporation were dealing as debtor and creditor. It makes no difference whether the appellee was a stockholder in the corporation or not. We are on this point of the case dealing with a loan of money from the appellant to the appellee, and they are to be treated precisely as any other borrower or lender.

The second claim made by the appellant is an untenable one. It is substantially this: That before the appellee is entitled to a release of his mortgage, although he may have paid every dollar due upon it, he must pay back to

the appellant corporation all the dividends or profits, which he may have, during his whole membership received from it. And in support of that proposition we have been referred to the 4th section of Article 6 of the Constitution of the Association.

If this 4th sec. of the 6th Art. of the Constitution was susceptible of such a construction (which, however, we do not think it is,) the 5th sec. of Art. 2 would put the question at rest. This latter section provides that the profits that may accrue, shall be credited *as so much paid* on the shares not paid up in full, and paid *in cash* to those who have paid up their shares. This latter section makes these profits *a payment* on the shares, and as a necessary sequence a payment on the mortgage, as the mortgage is given for the par value of the shares, and when the shares are paid in full the mortgage *ipso facto* is paid. In the latter part of the 2nd sec. of Art. 2, it is provided that when the shares are paid up by instalments and dividends of profits, the mortgaged property shall be released.

The profits, therefore, credited to the appellee are not to be refunded by him, but are to go as part payment of the mortgage.

*Decree affirmed, with costs.*

(Decided 26th March, 1884.)